170 NY Props. LLC v Edwards (2024 NY Slip Op 24317)

[*1]

170 NY Props. LLC v Edwards

2024 NY Slip Op 24317

Decided on December 11, 2024

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 11, 2024
Civil Court of the City of New York, Kings County

170 NY Properties LLC, Petitioner

against
Ella Edwards; DWIGHT EDWARDS, Respondent.

Index No. 306066-24

Law Offices of Scott D. Gross (Scott D. Gross, Esq.), for the petitioner 
Communities Resist (Rabiah Gul, Esq.), for the respondents

Karen May Bacdayan, J.

This is a nonpayment proceeding commenced in February 2024, seeking rental arrears of $15,692.53 from March 2023 through February 2024. Communities Resist ("CoRe") appeared for both respondents. Respondents filed an attorney answer on March 4, 2024, asserting a general denial, an objection in law that the rent demand had not been served in good faith, a breach of warranty of habitability defense and counterclaim, and a retaliation defense. (NYSCEF Doc No. 6.) Respondents filed a motion in July 2024 seeking leave to amend the answer; the proposed amended answer asserted a general denial, admitting the premises are rent-stabilized and that respondents are tenants and in possession of the premises, and included a defense of rent impairing violations pursuant to Multiple Dwelling Law ("MDL") § 302-a. The amended answer did not preserve any of the previously raised defenses and counterclaims contained in the original attorney answer. (NYSCEF Doc No. 10, proposed amended answer.) Rather, it interposed a new defense that rent impairing violations entitled respondent to a 100% rent abatement pursuant to MDL 302-a for any rent accruing six months after the issuance by the Department of Housing Preservation and Development ("DHPD") of a Notice of Violation ("NOV") if the violation is not certified as corrected by DHPD. The court granted the motion to amend respondents' answer on September 5, 2024. (NYSCEF Doc No. 15.) On September 9, 2024, an order to correct was issued in the resolution part, to correct four delineated DHPD violations. (NYSCEF Doc No. 17.) In the order, the court also denied respondent's request for further substantive motion practice. (Id.) The proceeding was thereafter transferred to the trial part. A pre-trial conference was held, and the parties were advised by order that there is to be no further motion practice in the trial part. The trial began on December 5, 2024.
Petitioner's Prima Facie Case
Petitioner's first witness, Nathan Klein ("Klein"), was sworn in. Petitioner's exhibits were pre-marked for identification which supported petitioner's prima facie case. All of the exhibits [*2]were admitted into evidence.[FN1]
, [FN2]
Klein credibly testified that he works for Hager Management. Klein's title at Hager Management is that of property manager. Hager Management is in the business of managing residential properties and they manage the subject premises. He is familiar with the property and the subject apartment because he has managed it for over 20 years.[FN3]

Respondent cross-examined Klein. Klein described in further detail how he manages the property. He visits the property once or twice a week, fields calls from tenants regarding repairs, hires contractors, makes inspections, ensures the building is cleaned and that the garbage is removed; "[e]verything that is associated with the building." There was no re-direct examination. Petitioner rested on its prima facie case and moved for the petition to be amended to date. The court reserved decision on petitioner's oral application to amend the petition.
Direct Examination of Dwight Edwards
Dwight Edwards was sworn in. He testified that he moved into Apt. 8 in the building in 1983. In 2018, he moved into the subject apartment (Apt. 10.) He resides with his wife, Ella Edwards, also named in the petition and represented by CoRe. Respondent is a boiler technician and plumber by trade.[FN4]
He has worked in this capacity for 22 years, and he has also been a plumber this entire time. As a boiler technician, he services boilers, repairs boilers, and installs boilers. Respondent testified that he ceased paying rent in or about February 2023. Petitioner moved to strike this testimony, arguing that all defenses in the original answer  which was amended by leave of court  were waived, and that the amended answer does not assert a defense based on a breach of the warranty of habitability (Real Property Law § 235-b) and, thus, respondent is not entitled to an abatement of rent. The court struck the testimony, noting that the only issue before the court is whether respondent is entitled to a 100% abatement pursuant to [*3]MDL 302-a.
Respondent offered into evidence several documents of which she sought to have the court take judicial notice: Respondents' exhibit 1 ("R1") is a printed version of the DHPD website violations pages for the building, offered to demonstrate that DHPD had not removed as certified three building-wide rent impairing violations and one rent impairing violation in respondent's apartment. There was no objection. R2 was a printout from the DHPD website indicating open violations of record in respondent's apartment. Petitioner objected to the relevance of this testimony, largely on the same grounds as its objection to testimony regarding payment of rent. Petitioner's objection was sustained. Petitioner objected to R3, printed information from the DHPD website written in layman's terms regarding how to remove violations. Petitioner's objection was sustained. R4, a certified fire inspection report from a prior case, 170 NY Properties LLC v Christopher Briney, et al., Civ Ct, Kings County, index No. 320863-23, was admitted into evidence.
Respondent credibly testified that he works seven days a week. He leaves the house at 4 a.m. He drives to work. He goes through the courtyard of the building to get to his car, and he gets to the courtyard through the back door of the building. Respondent marked for identification as R5 a picture of the door to the courtyard. There was no objection and it was admitted into evidence. R6 was a picture of how the door to the courtyard looks from the outside. Petitioner's objection was overruled and R6 was admitted into evidence.
Respondent stated that he uses this door to exit the building more than seven times per week. In addition to leaving for work in the morning, he exits through the door in order to take the trash out: "That is where the trash is." Respondent described the courtyard: there is a big tree in the middle of the courtyard, and to the left when exiting, there are 10 garbage cans against the fence. The garbage cans are plastic; some black, some green. He throws trash out every day. He described the rats referenced in the violations. They are "frightening" and "scary." He sees them whenever he is in the courtyard when it is dark. When you throw out the trash, the rats jump out at you and he has to just leave the trash on the ground and run away. Respondent's R7 and R8, pictures of the courtyard as it looked the morning the trial commenced, December 5, 2024, were admitted over petitioner's objection. R9, a picture of the garbage cans in the courtyard all marked "170," was admitted into evidence after voir dire. R10 through R12 were additional pictures of the courtyard, which were admitted into evidence without objection. Respondent stated that he is scared to use the backyard to go outside. To the best of his knowledge, there are still rats in the courtyard to this day. Respondent testified that management provides extermination services. He is not sure how it works. He has never seen an exterminator in the courtyard.
On cross-examination, petitioner elicited that respondent has never taken any pictures or videos of the alleged rats, or rat droppings/defecations, nor has he ever taken pictures of rats jumping out of trash cans. Respondent knows how to contact DHPD but he did not complain about rats since July 2023. Respondent testified that he is not a licensed plumber, but he is a licensed boiler technician. He follows the same routine every morning. He goes through the courtyard and ends up on Prospect Place. Petitioner sough to elicit testimony regarding the gas violation, a tenants' association, and the Department of Housing and Community Renewal. Respondent objected to this line of questioning as beyond the scope of direction examination. The court upheld respondent's objection. Respondent acknowledged that there were no rats in any of the pictures. Respondent testified that it is fair to say that notwithstanding his fear of the rats everywhere in the courtyard, [*4]he has not changed his daily routine. He testified that every morning he leaves the apartment and he sees rats, but does not take a picture because his hands are full of materials for work.
On re-direct, respondent clarified that he has complained to the superintendent of the building about the rats and the superintendent has never followed up with him regarding his complaints. He clarified that he has not made any complaints to DHPD regarding the rats by calling 311. He cannot recall if he made any complaints in 2023. When he complained in the past, DHPD would come to his apartment and inspect. He has not made additional complaints to DHPD about the rats because his wife takes care of those things. He has not taken pictures of the rats because he carries a lot of tools, saws, and garbage, and he is trying to get out to work. He is a businessman. He just wants to take care of his family. He has seen the rats all over, in the front and the back.
Over petitioner's objection, respondent was granted a continuance after lunch in order to retrieve proof of service of the notices of rent impairing violations from the file of an unrelated proceeding. [FN5]
Respondent marked for identification as R13 certified bulk mailing records from DHPD. Petitioner objected to the admission of R13, records purportedly relevant to service of DHPD Violation No. 16005225, Order Number 567* (a rent-impairing violation), issued on May 31, 2023, to "abate the infestation consisting of rodents rats at west inner court." Petitioner also objected to what was marked for identification as R14, bulk mailing records offered by respondent's counsel as relevant to service of DHPD Violation #16014164, Order Number 567* (a rent-impairing violation), issued on June 2, 2023, to "abate the infestation consisting of rodents rats at west inner section court." Specifically, petitioner's objections to exhibits R13 and R14 were on the basis the documents cannot be connected to particular violations, and moreover, the mailing dates do not correspond to the postmark on the DHPD bulk mailing records. At this juncture, petitioner moved for directed verdict in its favor pursuant to CPLR 4401.[FN6]
Citing to the Administrative Code of the City of New York, a/k/a Housing Maintenance Code ("HMC"), § 27-2115 (b), respondent argued that, as a matter of the law, the plain language of the statute provides that proof of mailing is established by subpoenaed DHPD records from a separate proceeding indicating that the notices of violations were mailed, and, accordingly, respondent has prevailed. Respondent rested.
The parties agreed on the record to a recess which would enable the court to consider [*5]petitioner's dispositive objection and issue a ruling in writing. The parties further agreed on the record that the following rulings can be anticipated: (1) if the court finds that respondent has failed to prove the elements of his defense and sustains petitioner's objection, then the court would consider petitioner's oral application to amend the petition to date, and, pursuant to CPLR 4401, a judgment for petitioner would enter based on the rent ledger in evidence; OR (2) if the court overrules petitioner's objection and finds that respondent has established prima facie the elements of his defense, then the two rent impairing violations for which no proofs of mailing were offered into evidence would be dismissed (DHPD Violation # 1600803, Order Number 742*; DHPD Violation # 16010146, Order Number 567*), and the trial would continue on the two violations set forth above.
DISCUSSION
Respondent's singular defense pleaded in the amended answer is that he is entitled to a 100% abatement from November 30, 2023 to present pursuant to MDL 302-a. "[T]he amended answer supersedes in all respects the previous pleading (citation omitted)." (Keary v Great Atl. & Pac. Tea Co., 96 AD2d 499, 499 [1st Dept 1983]; Park v Spivey's Trucking & Rigging Co., 216 AD2d 454, 455 [2d Dept 1995] [citing to Keary and distinguishing a "second" answer under unusual circumstances from an "amended" answer which supersedes the original answer].)
A "rent-impairing" violation is defined as "a condition in a multiple dwelling which, in the opinion of [DHPD], constitutes, or will constitute if not promptly corrected, a fire hazard or a serious threat to the life, health or safety of occupants thereof." (MDL § 302-a [2] [a].) "An asterisk (*) that appears next to an Order Number on the DHPD list of violations indicates that a violation is rent-impairing.[FN7]

Where DHPD issues a rent-impairing violation for a condition in a multiple dwelling that is not certified or removed from DHPD's records within six months after the date of mailing by DHPD to the owner of said rent-impairing violation,[FN8]
the owner is prohibited from collecting rent "for any premises" in the multiple dwelling after the six-month period has expired, until such time as the violation is corrected. (MDL § 302-a [3] [a] [i] - [ii])[FN9]
, [FN10]
MDL 302-a (3) (a) [*6]sets forth the elements of a cause of action for a 100% rent abatement premised upon the existence of rent-impairing violations. Relevant here is the following language:
If (i) the official records of the department shall note that a rent impairing violation exists in respect to a multiple dwelling and that notice of such violation has been given by the department, by mail, to the owner last registered with the department and (ii) such note of the violation is not cancelled or removed of record within six months after the date of such notice of such violation, then for the period that such violation remains uncorrected after the expiration of said six months, no rent shall be recovered by any owner for any premises in such multiple dwelling used by a resident thereof for human habitation in which the condition constituting such rent impairing violation exists[.]"
As here, the rent impairing violation need not be inside a tenant's apartment to raise the claim. Pursuant to MDL 302-a (3) (a) (ii), violations placed for conditions in common areas are presumed to exist inside a complaining tenant's apartment. Protestations that a tenant denied access to remediate common area violations will not serve to raise a material issue of fact regarding access. (Id.; Food First HDFC Inc., v Turner, 69 Misc 3d 1202 [A], 2020 NY Slip Op 51155 [U] [Civ Ct, New York County 2020].)
In a nonpayment proceeding, the tenant "must affirmatively plead and prove the material facts under" MDL § 302-a (3) (a) (i)-(ii). (MDL § 302-a [3] [c] [emphasis added].) In addition, "it is a precondition of a defense founded upon Multiple Dwelling Law § 302-a that, when interposed, a tenant must deposit with the clerk of the court 'the amount of rent ... upon which the proceeding to recover possession is based' which is the sum alleged in the nonpayment petition, including any amendments already made to the petition upon motion of the petitioner (emphasis added)." (1616 President St. Assocs., LLC v Ackie, 84 Misc 3d 128[A], 2024 NY Slip Op 51534[U], *1 [App Term, 2d, 11th, & 13th Jud Dists 2024].)
Thus, there are three elements of a successful claim pursuant to MDL § 302-a: (1) a deposit of the amount due under the original petition, which includes any amendments; (2) existence of a rent-impairing violation that has not been certified as corrected within six months of said notice; and (3) proof that the notice of violation for the open rent impairing violation was provided to the owner by DHPD by mail.
The Rent Deposit
Respondent did not tender the required deposit of the amount due under the petition upon submission of her motion for leave to serve an amended answer raising a defense pursuant to MDL 302-a. By the time the answer was amended and the proceeding was transferred to trial, said deposit had still not been made. In the interests of justice, the court extended respondent's time and required a deposit into respondent's attorney's escrow of the amount claimed in the petition, which had not been amended. It is not disputed that this deposit has now been [*7]effectuated, nor has petitioner challenged the timing of said deposit, the timing for which the court has discretion to extend. (22l E. 78th Tenants Corp. v Cohen, 36 Misc 3d 126[A], 2012 NY Slip Op 51158[U] [App Term, 1st Dept 2012] [conditionally denying landlord's request to strike MDL 302-a defense for so long as tenant complied with the formal rent deposit requirement].)
Service of the Notices of Violation by Mail; Continued Existence of Rent Impairing Violations
It is not disputed that rent-impairing violations exist and remain uncorrected according to DHPD records. What is disputed is that respondent can demonstrate that petitioner was properly "served" with the notices of violation, an essential element of the defense.[FN11]
Respondent having rested, the sole question at this juncture is whether respondent has made a prima facie demonstration that he has a defense pursuant to MDL § 302-a, and that "such notice" (by mail) of "such violation" was properly served. (MDL § 302-a [3] [a] [i].)
Respondent has sought to admit into evidence proof that DHPD served petitioner by mail with two rent impairing violations: (1) Violation # 16005225, Order Number 567* ("abate the infestation consisting of rodents rats at west inner court"), marked for identification as R13; and (2) Violation # 16014164, Order Number 567* ("abate the infestation consisting of rodents rats at west inner section court"), marked for identification as R14.
Respondent argues that service was completed pursuant to the provisions of HMC 27-2115 (b), which prescribes the manner of service by mail of a notice of violation to which DHPD must attest, and which creates a presumption "that a regular and systematic mailing procedure is followed by the department for the mailing of its notices of violation." HMC 27-2115 is specific to the section in which it is found ("Imposition of Civil Penalties') and prescribes the manner of service prerequisite to the imposition of civil penalties upon an owner who fails to timely certify violations as corrected. NYC HMC 27-2115 (b) states in relevant part:
"In any case where the provisions of this section authorize the service of such notice by mail, the statement of any officer, clerk, or agent of the department, or of anyone authorized by the department to mail such notice of violation, subscribed and affirmed by such person as true under the penalties of perjury, which describes the mailing procedure used by the department, or by the department's mailing vendor, or which states that these procedures were in operation during the course of mailing a particular cycle of notices of violation, shall be admitted into evidence as presumptive evidence that a regular and systematic mailing procedure is followed by the department for the mailing of its notices of violation. Where the department introduces into evidence the business records which correspond to the various stages of the mailing of a particular cycle of notices of violation, pursuant to subdivision (c) of rule forty-five hundred eighteen of the civil practice law and rules, then a presumption shall have been established that the mailing procedure was followed in the case of such cycle, and that such notice of violation has been duly served." (Id.)
To the extent the city has passed legislation regarding service of a notice of violation for the purposes of imposing civil penalties on a landlord, this is consistent with MDL 326 (4), which provides that "in a city, having a population of one million or more, a local law may provide for the manner of serving civil process for the enforcement of penalties, sanctions and remedies provided in such local law (emphasis added)." However, "civil penalties" under the HMC are distinct from a 100% rent abatement pursuant to MDL § 302-a. This may be a distinction without a difference; however, MDL § 326 ("Service of Notices, Orders and Summonses") prescribes a different manner of service for remedies available under the Multiple Dwelling Law. MDL § 326 (1) provides in full:
"Every notice, order or summons relative to a dwelling shall be served five days before the time for compliance therewith. The posting of a copy of such notice, order or summons in a conspicuous place in such dwelling, together with the mailing of a copy thereof, within five days of such posting, to each person whose name has been filed with the department of health or the department charged with the enforcement of this chapter, in accordance with the provisions of section three hundred twenty-five, at his address as therewith filed, shall be sufficient service thereof, except as provided in subdivision three [not relevant here]."
To the extent that the MDL may provide for alternative or more stringent methods of service, the court notes that MDL § 3 (4) (a) allows that city, towns, and villages "may make local laws, ordinances, resolutions or regulations not less restrictive than those provided in this chapter . . . [But,] [i]n the enforcement and administration of this chapter in a city of three hundred twenty-five thousand or more persons, the penalties, sanctions and remedies enacted by local law may be applied, notwithstanding their inconsistency with this chapter, or the provisions of this chapter (emphasis added)." The court need not opine on the interpretation of MDL § 3 (4), as even under the lesser standard set forth in the HMC, respondent has not demonstrated that the notices of rent impairing violations were properly served.
Respondent subpoenaed DHPD for documents, but not for proof of service of the rent impairing violations. (NYSCEF Doc No. 23, so-ordered subpoena.) Instead, for that purpose, respondent sought to rely on records subpoenaed in a separate proceeding which had previously settled. The records were no longer in the courthouse, but respondent's attorney was able to have an attorney from DHPD email them to her. DHPD was not subpoenaed to testify. While the records were certified for that proceeding, the court cannot speculate whether they would have been admitted into evidence, or whether the testimony of a DHPD agent would clarify the bewildering pile of papers submitted as respondent's exhibits R13 and R14 (each over 40 pages).
It has long been recognized in the law of evidence that a letter properly mailed is presumed to have been received. (News Syndicate Co. v. Gatti Paper Stock Corp., 256 NY 211 [1931]; Dulberg v. Equitable Life Assur. Soc. of U.S., 277 NY 17 [1938].) Here, however, respondent's proof of mailing proves nothing. Some of the pages of the subpoenaed DHPD documents from the other proceeding are upside down, some pages are out of order, and on some pages the full text is cut off. Respondent's exhibit 13 contains an affidavit from an authorized DHPD representative, Anthony Forde who avers that DHPD's mailing vendor picks up certain cycles of violations. There is also a "notice of violation daily cycle job" which states "job ended successfully" and appears to be in reference to 75 violations. None of the violations are delineated by violation number or order number. Finally, nowhere in respondent's R13 could the [*8]court locate petitioner's mailing address. After meticulously sifting through R13 for 45 minutes, the court briefly perused respondent's R14 and found that it suffered from the same infirmities. Thus, respondent failed to prove that the notices of violation for Violation # 16005225, Order Number 567*, and Violation # 16014164, Order Number 567*, were mailed by DHPD to petitioner.
"It is not the Court's obligation to decipher illegible documents or to guess as to what the meaning of the 'shorthand' entries contained therein mean." (John Hancock Life Ins. Co. of NY v Hirsch, 24 Misc 3d 1214[A], 2009 NY Slip Op 51450, *6 [Sup Ct, Westchester County 2009] affd 77 AD3d 71 [2d Dept 2010].) Likewise, this Court should not have to struggle to understand inscrutable entries culled from DHPD's database. Petitioner's objection to respondent's exhibits R13 and R14 is sustained.
Accordingly, it is
ORDERED that petitioner's motion to amend the petition to date is GRANTED; and it is further
ORDERED that a possessory judgment and a money judgment in the amount of $28,019.90 shall enter as against respondent; and it is further
ORDERED that the warrant shall issue forthwith without a stay, execution forthwith; and it is further
ORDERED that the earliest execution date is December 12, 2024.
This constitutes the decision and order of the Court.
Dated: December 11, 2024
Brooklyn, NY
____________________________
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1:Petitioner offered Exhibit 1 (P1), a certified copy of the deed. There was no objection. Petitioner's Exhibit 2 was "rent statement." Petitioner laid a business record foundation pursuant to CPLR 4518. There were no objections. Petitioner's Exhibit 3 was a certified DHCR registration printout to which no objection was voiced. The court marked for identification an original successor lease agreement between petitioner and Dwight Edwards and Ella Edwards. The signatures were authenticated. The lease was admitted into evidence as P4. The lease agreement expires March 31, 2024. There were no objections. Petitioner marked as P5 for identification a copy of a subsequent lease renewal agreement. Petitioner described the efforts to locate the original and the places searched after he had made a photocopy. Respondent objected on the basis of the best evidence rule. Respondent's objection was overruled and was admitted
Footnote 2:Hereinafter, exhibits are primarily referred to in shorthand as P1, P2, P3, etc., or as R1, R2, R3, etc.
Footnote 3:Petitioner offered Exhibit 1 (P1) a certified copy of the deed. There was no objection. Petitioner's Exhibit 2 was "rent statement." Petitioner laid a business record foundation pursuant to CPLR 4518. There were no objections. Petitioner's Exhibit 3 was a certified DHCR registration printout to which no objection was voiced. The court marked for identification an original successor lease agreement between petitioner and Dwight Edwards and Ella Edwards. The signatures were authenticated. The lease was admitted into evidence as P4. The lease agreement expires March 31, 2024. There were no objections. Petitioner marked as P5 for identification a copy of a subsequent lease renewal agreement. Petitioner described the efforts to locate the original and the places searched after he had made a photocopy. Respondent objected on the basis of the best evidence rule. Respondent's objection was overruled.
Footnote 4:Hereinafter, Dwight Edwards is the only respondent to which the court refers. Ella Edwards did not appear for trial.

Footnote 5:Despite subpoenaing DHPD for other records, respondent had not subpoenaed proof of service of the notices of violation for this proceeding from DHPD, nor had an individual from DHPD been subpoenaed ad testificandum.
Footnote 6:CPLR 4401 states in relevant part, "Any party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue[.]" It is reversible error to grant a motion pursuant to CPLR 4401. "A motion for a directed verdict cannot be made until the close of the evidence presented by the opposing party. Once made, the legal standard in all four judicial departments that trial courts must apply in determining the motion is whether, on the evidence presented, there is no rational process by which the trier of fact could base a finding in favor of the non-moving party. Hon. Mark C. Dillon, Supplementary Practice Commentaries (McKinney's Cons Law of NY, CPLR 4401.)

Footnote 7:"This symbol, which can appear after an Order No, indicates that the violation is a rent impairing violation, as defined in the Multiple Dwelling Law of the State of New York. A rent-impairing violation is a condition within a multiple dwelling which constitutes, or if not promptly corrected will constitute, a fire hazard or a serious threat to the life, health or safety of occupants thereof." HPD online GLOSSARY-Reference Book, available at https://hpdsigns.nyc/hpd-online-glossary-reference-book/ [last accessed December 10, 2024].)
Footnote 8:Only DHPD has the power to issue a rent impairing violation. Gild v Fried, 298 AD2d 275, 275-276 (1st Dept 2002).
Footnote 9:A "rent-impairing" violation is defined as "a condition in a multiple dwelling which, in the opinion of [DHPD], constitutes, or if not properly corrected, will constitute, a fire hazard or a serious threat to the life, health or safety of occupants thereof." NY MDL § 302-a [2] [a].) The DHPD online glossary defines an asterisk (*) indicates that a violation is rent impairing: "This symbol, which can appear after an Order No, indicates that the violation is a rent impairing violation, as defined in the Multiple Dwelling Law of the State of New York. A rent-impairing violation is a condition within a multiple dwelling which constitutes, or if not promptly corrected will constitute, a fire hazard or a serious threat to the life, health or safety of occupants thereof."
Footnote 10:The promulgated list of rent-impairing violations can be found at 28 RCNY § 25-191.
Footnote 11:Petitioner has indicated that, should this proceeding not be dismissed, it will object to the two remaining rent impairing violations  Violation # 1600803, Order Number 742*, and Violation # 16010146, Order Number 567*  on the basis that respondent has not offered into evidence proof of their mailing.